## Case No. 6,536.

### HITCHCOCK v. ROLLO.

[6 Chi. Leg. News, 9; 18 Int. Rev. Rec. 166.] [1]

Circuit Court, N. D. Illinois. June, 1872.

THE RIGHT OF SET-OFF IN EQUITY UNDER THE BANKRUPT LAW.

1. The same points decided as in the previous case.

2. Where a person borrowed money of an insurance company, and had taken an assignment of a policy of insurance issued to himself and his partners upon their joint property, the assignment being made after the insolvency of the company, held on a bill filed by the borrower to set off the debt due the company for a loss on the policy before the assignment was not allowable. The debts and credits were not mutual, nor existing in the same right.

3. Held, further, that the plaintiff, in such a case, should allege and prove not only that he is the nominal owner of the policy, but that in equity he has a right to stand in the place of the parties to whom the policy was issued.

4. Where a person has borrowed money of an insurance company, and is holder of a policy of insurance on which the company is liable to him for a loss on the same, and the company becomes insolvent, with proceedings in insolvency or bankruptcy imminent, and with the knowledge of these facts he obtained the policy with the purpose of setting off the claim under the policy for the debt he owed the company, held that the set-off was not allowable under the twentieth section of the bankrupt law [of 1867 (14 Stat. 526)]; notwithstanding the policy might have been assigned to him before the petition in bankruptcy was filed.

[Cited in Hovey v. Home Ins. Co., Case No. 6,743.]

5. To allow the set-off under such circumstances would be a substantial fraud on the statute, and give an unjust preference to one creditor to the prejudice of other creditors.

6. Notwithstanding the two exceptions in the twentieth section of the bankrupt law, a court of equity is not foreclosed from disallowing a set-off outside of the exceptions if the circumstances show that to permit it would be inequitable.

[This was a proceeding by Charles Hitchcock against W. E. Rollo, assignee of the Merchants' Insurance Company.]

Before DRUMMOND, Circuit Judge, and BLODGETT, District Judge.

DRUMMOND, Circuit Judge. This case, in many respects, is like the case of Drake v. Rollo [Case No. 4,066], just decided. The plaintiff borrowed of the company twenty thousand dollars, on the 15th day of May, 1867, payable in five years. At the time of the great fire last fall, he held three policies of insurance issued to him by the company on property in Chicago, amounting to $11,000,

and on which there was a total loss. There was also a policy issued by the company to the plaintiff, Dupee and Evarts (these two last named being partners of the plaintiff) for $1,500, on property owned by the three, on which there was, at the same time, a total loss. There was also an account due from the company to the firm of Hitchcock, Dupee & Evarts for several hundred dollars. On the 27th of October, 1871, the firm assigned their claim to the plaintiff. The plaintiff filed a bill on the equity side of the court, in April last, to set off all these claims against the amount to become due the company for the money borrowed. The only point not decided in the previous case is as to the claim assigned to the plaintiff. It is admitted that the plaintiff, at the time of the assignment, knew the company was insolvent, and that proceedings in insolvency or bankruptcy were imminent.

There are two questions which we may consider in this case, as they have both been argued, and exist either together or separately in several of the cases, which were taken up at the same time. 1st. Can the claims assigned be allowed as a set-off; and, 2d. Does the knowledge which a person had of the pecuniary condition of the company, and the probable consequences growing out of the same, affect the right of set-off?

As to the first question: If the debt of the plaintiff were due, and no assignment had been made, in a suit brought against the plaintiff he could not set off the claim due on the policy to him and his two partners, because that would make the partners liable for the individual debt of each member of the firm. Dehon v. Stetson, 9 Metc. (Mass.) 341; Wat. Set-Off, § 222, and the authority there cited. If the case were reversed, and suit were brought by the plaintiff and his partners on the policy against the company, the latter could not set off the debt from the plaintiff. In each instance there is wanting that mutuality which the statute requires, and the debts exist in different rights. If the joint claim had become vested in the plaintiff, so that he could have brought suit in his own name, it might be different. Columbian Ins. Co. v. Black, 18 Johns. 149; Parker v. Beasley, 2 Maule & S. 423. The case of Tucker v. Oxley, 5 Cranch [9 U. S.] 34, was cited and relied on at the argument. A firm had been dissolved, and the partnership assets had passed to one of the firm, who had become bankrupt. The assignee brought suit against two persons on a debt due the bankrupt. They were allowed by a majority of the court, to set off a debt previously due to them from the firm. This was the ruling under the peculiar wording of the bankrupt law of 1800 [2 Stat. 19], and seems to be an exceptional case.

It is very doubtful whether it would be proper, under the present bankrupt law, which contains provisions as to the distribution of the joint and separate estate of part-

ners, not in the law of 1800. An assignee of a firm brought an action on a debt due the firm. It was held that the defendant could not set off a debt from one of the partners, by the supreme court of Massachusetts. Williams v. Brimhall, 13 Gray, 462. Courts of equity follow the law in allowing or refusing set-offs, qualified by the rule that special circumstances may control the equity. 2 Story, Eq. Jur. 1437.

What are the special equities of the plaintiff? He alleges that the debt owed by him is not yet due; that the company is insolvent and in bankruptcy; and that the firm claims against the company were assigned to him with knowledge of the insolvency. If we conceded that an assignment by the other partners might give the plaintiff the right to a set-off, we think it is incumbent on him, when he comes into a court of equity, and seeks to have the claims assigned allowed as a set-off, to show that he is more than the nominal owner. In other words, his equitable grounds for relief should be clearly established. From all that appears in this case, the fair inference is that these claims were merely transferred to enable the holders of the fifteen hundred dollar policy to realize their claim in full out of an insolvent corporation. No special equities, within the true meaning of the rule, are shown.

As to the second and more important question, the words "mutual debts" and "mutual credits," used in the 20th section of the present bankrupt law, are not essentially different from those to be found in most of the previous bankrupt laws of England and of this country, subject to various conditions and limitations. And the argument is that the court can not go outside of the language of the section, and that if it is a mutual debt or a mutual credit it can in all cases be set off, except when it is a claim in its nature not proveable against the estate, or one purchased by or transferred to the bankrupt's debtor after the petition in bankruptcy is filed, those only being excluded by the terms of the law. And in support of this position, the case of Hawkins v. Whitten, 10 Barn. & C. 217, decided under the English bankrupt law of 6 George IV., was relied on. The question there was whether the defendant had the right to set off notes of the bankrupts obtained by him after he knew that the bankrupts, who were bankers, had stopped payment, but before he knew that an act of bankruptcy had been committed. And the court decided that he had such right, although he might have reason to believe them to be insolvent. But the case was decided under a statute which had omitted the words of a previous statute, which declared that the set-off should not be allowed where the party had obtained the claims against the bankrupt after he stopped payment. The omission of such words where the law had been substantially re-enacted, with that exception, was an argument well nigh irresisti-

ble in favor of the construction given by the court, notwithstanding Lord Tenterden significantly asked whether it would not be a fraud on the bankrupt law.

It is said that in view of such a decision as this and of the English bankrupt laws, the 20th section of our bankrupt law, in making only two exceptions to the right of set-off in the case of mutual debts or credits, one a claim not proveable against the estate, and the other a claim obtained after the filing of the petition, intended to allow all others. That principle goes very far, and we are not prepared to admit it to that extent. We believe many cases may be imagined where a court of equity would not permit a set-off, although not within the exceptions. For example, a person might have borrowed the whole capital of the insurance company, and be on the way to its treasurer to pay it, and meet a creditor who informed him he had a petition in his hands ready to be filed in the district court, and alleging the undoubted fact of the bankruptcy and insolvency of the company. In such case, if he had taken the money to buy up claims against the company at ten cents on the dollar, would equity allow the set-off? The case supposed is within neither of the exceptions of the twentieth section, and yet we can not doubt that it would be the duty of a court of equity to disallow a claim of set-off which would thus permit a debtor to absorb the whole capital of the company by credits so purchased, for the reason that it would be unjust and a substantial fraud on the bankrupt law.

The object of all general rules applicable to the right of persons should be to promote the greatest good. It is upon that principle that the bankrupt law rests,—the equal division among all creditors of the property of an insolvent company or individual. We are called on to make the application of principles, not in a solitary case here and there, but under circumstances calculated to bring to a crucial test the soundness of rules,—the insolvency and bankruptcy of numberless insurance companies, whelmed in a common ruin, and where, if the doctrine contended for by the plaintiff is maintained, a comparatively few persons holding all their assets, amounting to millions, can retain them by going into the market, purchasing, with full knowledge of all the facts, claims against them for a nominal sum. But one decision under the bankrupt law of 1867 was cited on the argument, having a bearing on the point now under consideration,—In re City Bank of Savings [Case No. 2,742],—by the district judge of California. It was held in that case, that the fact that the creditor of the bankrupt, at the time he assigned his claim to a debtor, had reason to believe the bankrupt to be insolvent, did not prevent the debtor from setting off the claim thus assigned against the debt. The report of the case does not state explicitly whether the debtor, at the time of the assignment, knew of the insolvency of the bankrupt, but perhaps it may be an inference that such was the fact. The court overruled the objection that the effect of allowing the set-off would be a fraud on the law, and seemed inclined to give an absolutely literal construction to the 20th section, while admitting that the result would be to enable one creditor to obtain full satisfaction of his claim to the prejudice of other creditors. We admit that this may be so if there is good faith. We do not doubt a debtor can purchase a claim at any time before the filing of the petition in bankruptcy against the creditor, and set it off, provided the purchase is made without notice of insolvency, for value, fairly, and not in fraud of the law; and we thus give full effect to the statute. If the case decided in California intended to sanction a set-off such as is claimed here, we do not feel inclined to adopt the rule there stated. We hold it is the duty of a court of equity so to construe the twentieth section as not to suffer it to defeat the main purpose of the bankrupt law, or to permit a trick of one creditor to prevail for the payment of his claim in full to the sacrifice of the claims of other creditors. It is said that there must be some time fixed within which doubtful transactions can no longer be questioned. It is for a court of equity, or the bankrupt court in the exercise of its equitable powers, to decide under what limitations the right shall be placed, looking at all the circumstances of the case.

Our attention has been directed to a case not cited on the argument,—Smith v. Hill, 8 Gray, 572. In that case the defendant purchased claims against a person, knowing him to be insolvent, and having reason to believe that he was about to be put into insolvency, and then, in a suit by the assignee, proposed to set off these claims against a debt he owed the insolvent. Under the statute mutual debts and demands could be set off. But the court held that the effect of allowing the set-off would be to interfere with the proper distribution of the estate of the insolvent, and would be contrary to the spirit of the insolvent laws; that it would enable a debtor to give a preference to such of the creditors as he might favor, and would allow debtors to pay debts by purchasing claims against the insolvent at a discount. And that decision was not made under amendments which had expressly prohibited such set-off, but independently of them, and on the general ground that it would be inequitable to permit the set-off. We think the principles of that case are applicable to this, and that they constitute a true test to determine whether the set-off claimed here should be allowed. See Hilliard on Bankruptcy (page 224), who adopts the principle of Smith v. Hill; Avery & H. Bankr. Law, 157; Wat. Set-Off, 141a. We are of the opinion, therefore, that a set-off is not allowable on both the grounds stated.

In construing our bankrupt law we have to regard it as a whole system, framed, doubtless, at that time, in view of previous laws, both English and American, but where it was impossible to include all the various circumstances and contingencies which had given occasion to the numerous alterations and modifications of previous laws; and this is especially true of the twentieth section in relation to set-off. Notwithstanding the language there is general, and only two exceptions are named, we must still think that it did not intend, outside of these exceptions, to foreclose a court of equity from disallowing a set-off when it would, on the whole, work injustice. We think, therefore, we are at liberty to place such a construction on our bankrupt law as is in harmony with the common sense of equity; and that such a set-off as the one claimed here ought not to be permitted, is abundantly manifest from the whole tenor of recent legislation, both English and American. We confess we think we go quite far enough, which we do in obedience to authority, when we admit that a man may borrow a part, or even the whole, of the capital of an insurance company, and then take out policies of insurance, it may be because of the loan, and, in case of loss and insolvency of the company, set off the loan against the loss on the policy, even though it may leave other creditors with nothing. There may be instances where this can be done, when it would be difficult to reconcile it with our notions of a sound morality, or with that rule which requires us to do to others as we would have them do to us. But we do not feel inclined to go further, and adopt a rule which would permit the debtors of a bankrupt company to realize the full amount of their claims on the company for a nominal sum, while other creditors thereby go empty-handed.

[NOTE. In Drake v. Rollo, Case No. 4,066, it was held that as soon as the loss occurred the relation of debtor and creditor ensued, and the insured could set off his loss under the policy against a claim of the insurance company. See, also, note to Case No. 6,535.]